# Hollinger *versus* Devling.

1. Where a party, intending to redeem from tax sale the "J. M." tract, by his own mistake directed the treasurer to redeem the "J. R." tract, in the same township, which had been sold at the same tax sale, and the treasurer so applied the money, such facts constitute no defence to an ejectment brought by a vendee of the purchaser of the "J. M." tract, after the time for redemption had expired.

2. Evidence that the plaintiff in the ejectment was informed by his vendor at the time he purchased that the defendant claimed to have redeemed the "J. M." tract, is immaterial to defeat the plaintiff's title.

3. Where the plaintiff in ejectment shows by undisputed evidence a good legal title, and the defendant's case shows no title, the court is justified in directing a verdict for the plaintiff.

February 21, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Centre county:* Of January Term, 1884, No. 165.

9 OUTERBRIDGE.—27.

Ejectment, brought to April term, 1883, by Joseph Devling against Amos Hollinger, for a tract of land situate in Rush township, Centre county, containing 433 A., 153 P., surveyed in the warrantee name of Jacob Myer.   Plea, not guilty.

On the trial, before HOY, P. J., the plaintiff, after showing title out of the commonwealth, put in evidence the records of the commissioner's office, showing that the tract in question was duly assessed as unseated land for the taxes of 1870 and 1871, owner Amos Hollinger, total $30.19; and that the tract was sold for non-payment of said taxes, at treasurer's sale, June 10, 1872, to John Irwin, Jr., and a treasurer's deed was executed to him therefor, dated August 26, 1872.

The plaintiff further claimed title by virtue of the following assignment indorsed on said treasurer's deed:

"I, John Irwin, Jr., of Bellefonte, Penn., grantee named in the within deed, for the sum of five hundred dollars to me in hand paid, the receipt whereof is acknowledged, do hereby assign and transfer unto Joseph Devling, and his heirs and assigns, all my right, title, interest, and claim of and to the tract of land within mentioned and described; and its rights and privileges thereto appertaining, without any covenant or representation as to title or estate therein, to have and hold the interest of the said John Irwin, Jr., therein, unto the said Joseph Devling, his heirs and assigns, forever.

"Witness my hand and seal this 16th day of March, A. D. 1883.

"JNO. IRWIN, JR."

Acknowledged March 16, 1883.

Plaintiff rested.

The defendant, in order to show that he had redeemed said tract after the said treasurer's sale, offered in evidence certain letters and a receipt, in which a tract of land surveyed in the warrantee name of "Jacob Rush," was referred to as the one intended to be redeemed.   These letters and the receipt are set forth at length in the opinion of this court.   It appeared that there was a tract in said township known as the Jacob Rush tract, which had been sold for taxes on June 10, 1872, to one Pruner, the proper redemption money of which was $2.62 less than the amount required to redeem the Jacob Myer tract.   There was no evidence as to who was the owner of the Jacob Rush tract at the time of the treasurer's sale. The treasurer retained the redemption money received from Hollinger until September 15, 1873, when he paid it to Pruner, and then marked the Jacob Rush tract redeemed on

[Hollinger *v.* Devling.]

the redemption book. The time for redemption of the Jacob Meyer tract having expired, this suit was brought.

The defendant offered to prove "that at the time of the assignment, which is endorsed on the deed of James F. Weaver, treasurer, to John Irwin, Jr.,—at the time of that assignment made to the plaintiff,—he informed the plaintiff, Joseph Devling, that the defendant, Amos Hollinger, claimed to have redeemed this land, and that in consequence of that claim he would only make such a conveyance as is endorsed upon this deed, without covenant or representation of title or estate, the testimony being offered for the purpose of showing that if any equities existed in the plaintiff from want of notice of the actual condition of affairs as to the redemption of the land, that these equities were destroyed by the notice aforesaid."

Objected to, as irrelevant and incompetent to affect the legal title of the plaintiff.

Objection sustained; exception.

The court instructed the jury to find for the plaintiff. Verdict accordingly for the plaintiff for the land described in the writ, and judgment thereon. The defendant took this writ of error, assigning for error the rejection of his offer of evidence, as above, and the action of the court in directing a verdict for the plaintiff, instead of submitting to the jury to find, as a question of fact, whether under all the circumstances of the case Hollinger had not actually, by payment of his money, redeemed the land in dispute from the tax sale made June 10, 1872.

*Beaver* (*Gephart* with him), for the plaintiff in error.—There can be no doubt that Hollinger intended to redeem the Jacob Meyer tract, and paid the exact redemption money required to do so. That his clerk made a mistake in the name, and that the treasurer applied the redemption money to another tract, does not affect his equity arising out of the fact of payment, and it is well settled that in ejectment, which in Pennsylvania is an equitable action, he may set up his equity to defeat a legal title. Peebles *v.* Reading, 8 S. & R., 484; Bubb *v.* Tompkins, 47 Pa. St., 359. The court erred in rejecti g our offer to show that the plaintiff was not a bona fide purchaser without notice of the defendant's claim of title. In connection with our offer, the peculiar wording of the assignment from the purchaser at the tax sale to the plaintiff was sufficient to take the case to the jury.

*J. A. Orvis* (*J. L. Spangler* with him), for the defendant in error.—The question of notice to the plaintiff below of the

defendant's claim of title at the time he purchased is irrelevant. A purchaser, with or without notice, takes such title as his vendor had, which in this case was a perfect title, even though such vendor had knowledge of defendant's claim: Bracken *v.* Miller, 4 W. & S., 102; Meehan *v.* Williams, 48 Pa. St., 238. Equity will relieve against mutual mistake, but here the mistake, if any, was that of Hollinger alone. He may have owned the Jacob Rush tract,—there is no evidence as to that,—and may have intended to redeem it. Whether or not, a secret intention to redeem one tract where another tract is in fact redeemed, cannot operate to defeat the legal title of the purchaser of the tract intended to be redeemed, after the limitation of the time for redemption has expired: Stephens *v.* Wells, 6 Watts, 325; Taylor *v.* Commissioners, 3 Pa. Rep., 112. There being no disputed facts, and the plaintiff having made out his case, the court was right in directing a verdict.

Mr. Justice GREEN delivered the opinion of the court, October 6, 1884.

We would gladly relieve the defendant in this case from his dilemma, if it were possible to do so. But we are quite unable to discover any method by which this can be done, consistently with legal requirements which are so plain and so directly applicable to the undisputed facts of the case, that they can not be disregarded. The whole case is in a nutshell. The tract of land in question, known as the "Jacob Meyer" tract, was sold for taxes on June 10, 1872. It was purchased at the tax sale by John Irwin, Jr., who afterwards sold it to the plaintiff. The defendant, Hollinger, was the owner of the tract at the time of the sale. His defence now is that he redeemed it within the time appointed by law. Whatever acts were done in the way of redemption were done in writing. There were no verbal communications whatever. The whole of the writings which passed between the defendant and the treasurer in connection with the alleged redemption consist of four letters and a receipt. They are as follows:—

LANCASTER, Pa., June 18, 1872.

TREASURER OF CENTRE COUNTY.

*Dear Sir:*—Are there any taxes assessed and unpaid on my tract of coal land situated in Rush township, near Philipsburg? If so please advise me of the fact, stating amt. and I will remit.

Yours truly,
AMOS HOLLINGER.
Per ZERCHER.

[Hollinger *v.* Devling.]

LANCASTER, Pa., June 22, 1872.

JAMES F. WEAVER, Treas., Bellefonte, Pa.

*Dear Sir:*—Yours of 20th inst. to hand in regard to taxes on my tract of coal land. The following is a copy of your statement: Taxes, $30.19; costs, $4.87; bond, $60. There must certainly be something wrong about that bond business. Probably you mean 60 cents. Please let me know immediately. Is there no way of giving me notice in writing whenever there is tax assessed on my land, stating the amt. so that. I know when and how much to pay. I am willing to pay for the notice if required. This thing of having to redeem my land every few years is annoying to me.

Yours truly,<br>
AMOS HOLLINGER.<br>
Per ZERCHER.

TREASURER'S OFFICE, BELLEFONTE,
26th June, 1872.

AMOS HOLLINGER, Esq.

*Dear Sir:*—My statement is from the record:

| | |
|---|---:|
| Taxes for 1870 and '71, . . . . | $30.19 |
| Costs, . . . . . . | 4.87 |
| Bond over and above taxes and costs, . . | 60.00 |

All you will have to pay $35.06, with 25 per cent. added. The bid was tax and cost in the first place and then other parties run it up on him to $60 above tax and cost. You can redeem any time within two years from the 10th June, 1872, and the costs will be no more than it is at present. Tax sales only occur every two years, and only once during a treasurer's term, so we know nothing in regard to the whereabouts of parties owning land. Tax to save costs of adv. etc. should be paid each even year by the 10th March. You have not to pay till Mar. 1874, and every two years thereafter by the 10th Mar., . . . . . . $35.06

If you wish to redeem, remit 25 per cent., . . 8.77

| | |
|---|---:|
| Total, . . . . . . | $43.83 |

Yours, etc.,<br>
JAS. F. WEAVER,<br>
*Treasurer.*

LANCASTER, Pa., Feb'y, 26, 1873.

MR. JAMES F. WEAVER,
Treasurer of Centre Co. Penna.

*Dear Sir:*—Enclosed I hand you check for Forty-three $\frac{83}{100}$ dollars, amt. taxes on our coal land known as the "Jacob

[*Hollinger v. Devling.*]

Rush tract," near Philipsburg; this as per your advice of 26th June 1872, settles all claims for taxes up to March 10, 1874. Please send me a receipt and oblige,

Yours truly,

Amos Hollinger.

Per Zercher.

Received Bellefonte, 27th Feb'y, 1873, of A. Hollinger, Esq., his c'k for Forty-three $\frac{83}{100}$ for redemption-money on the Jacob Rush tract of unseated land in Rush twp, Centre Co., said tract having been sold to E. J. Pruner for taxes of 1870 and '71, on the 10th June, 1872.

$43$\frac{83}{100}$.          Jas. F. Weaver.

*Treas. Centre Co.*

Sir:—As the taxes on U. S. land are only collected every even year, your lands will, and cannot be sold before the 2nd Monday of June '74. By paying on or about the 1st March, '74, you will avoid the extra expense of adv. same for sale.

Yours, etc.,          J. F. Weaver.

The foregoing papers constitute the entire evidence as to the fact of redemption. It was proved orally that there was a tract called the "Jacob Rush" tract in Rush township, Centre county, and that it was sold for taxes on June 10, 1872, and also that the amount necessary to redeem it was $41.21. It is beyond all question that the papers in evidence establish an actual redemption by Hollinger of the Jacob Rush tract. His own letter remitting the check for payment of the redemption money so declares, and the treasurer's receipt, returned to him the next day, expressly states that the money was received as the redemption money of that tract. On this testimony the court directed a verdict for the plaintiff, and it is this direction which constitutes the substance of the principal assignment of error. It is contended that the court below should have left to the jury the question *whose* mistake it was that led to the misapplication of the redemption money to the Rush tract, instead of the Meyer tract. But the difficulty is that there was no evidence to send to the jury on that question. In truth it was not proved that there was any mistake in the case. Both the defendant and his clerk who wrote the letter remitting the money, were examined as witnesses and neither of them testified that there was any mistake in the letter. Neither of them said that it was intended to pay the redemption money on the Jacob Meyer tract, or that having such an intention the "Jacob Rush" tract was named in the letter by mistake for the "Jacob Meyer." They did not even testify that the defendant did not own the Rush tract, or have

[Hollinger v. Devling.]

any interest in it. How then could the court leave it to the jury to say there was a mistake, when the defendant himself did not say so? Even if it be conceded that there was an intention to redeem the Meyer tract, it is absolutely certain that no such intention was expressed, and it surely would never do for us to declare as the law, that an unexpressed intention to redeem one tract, should be permitted to confer a title by redemption, against an actually expressed intention to redeem another tract by the same redemption payment. In this case the treasurer acting upon the explicit authority of the defendant, applied the redemption money precisely as he was directed to do, to the redemption of the Jacob Rush tract. He entered the redemption of that tract upon the Redemption Book kept for that purpose, and paid the redemption money to E. J. Pruner, who had purchased the Rush tract. Certainly he had a right to do this. Indeed he was bound to do it, and he was so bound as the direct consequence of Hollinger's own act in remitting him the money as the redemption money of the Rush tract. This consideration is intensified by the circumstance that the redemption money remained in his hands until September following its receipt in February, 1873, thus affording Hollinger the amplest opportunity to correct the mistake before the money was paid over to Pruner, the purchaser of the Rush tract. It appears then that the redemption of the Rush tract was completed by the payment of the money in question, and the written authority of the defendant. After this result has been accomplished by means of the defendant's own act, we cannot think it proper that he should be heard to say, that this same act of redemption has operated to redeem another and distinct tract, simply because he had an unexpressed intention to that effect. Titles which depended upon such indefinite and uncertain conditions as these would have but little value.

The case is still more serious against the defendant than the foregoing considerations indicate. He sent the money to the treasurer on February 26, 1873, and on the 27th, the treasurer sent him a receipt in which he expressly stated that the money was received as the redemption money on the Jacob Rush tract, which had been sold for taxes to E. J. Pruner. It was certainly the duty of the defendant to read the receipt, and take notice of its contents. He at least knew whether he intended to redeem the Rush or the Meyer tract, and when he was notified that he had redeemed the Rush, he should have corrected the mistake if there was any. He had time until June 10, 1874, in which to do this, but he never did it. In such circumstances, if there are unfortunate consequences arising, first out of his own express act of negligence in giving

a mistaken direction to the treasurer, and secondly, from his own protracted omission to correct the mistake when he was distinctly and promptly notified of it, he cannot complain if he must bear those consequences. They are of his own production. The theory that the mistake might have been made or caused by the treasurer is too far-fetched for practical use. There is not a particle of evidence to support it. There is not a word in either of his letters indicating that the money was due on the Jacob Rush tract. The letter probably written by him on June 20, 1872, ought to be in the possession of the defendant, as it was addressed to him, but it was not produced and is not in evidence. In order to justify an inference of mistake by the treasurer, we would be obliged to assume that he wrongly stated in that letter that the Rush and not the Meyer tract was the one upon which the redemption money was due. But of course no court could make such an assumption in the absence of the letter and of any evidence of its contents, and therefore no jury could be permitted to make such a finding. Hence we see no error in the court passing upon the whole case, and directing a verdict upon all the testimony in favor of the plaintiff. There was no dispute about the facts, and all the controlling facts were evidenced by writings. The testimony offered and rejected, could not be of any moment in the cause. The plaintiff's title was good or bad, altogether independently of the matters contained in the alleged notice. It depended only on the fact of redemption, and no amount of notice could affect that fact, or its legal consequences. There was no secret trust or equity in the case.

Judgment affirmed.